**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

OTIS BRUCE,

        Plaintiff,

        -v-                 1:23-CV-398 (AJB/PJE)

ITW BUILDING COMPONENTS GROUP,
INC.,

        Defendant.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>DECISION and ORDER</u>**

## I.    INTRODUCTION

On February 27, 2023, plaintiff Otis Bruce ("plaintiff") filed this civil action in Supreme Court, Ulster County, against defendants Illinois Tool Works, Inc. and ITW Building Components Group, Inc. ("ITW" or "defendant"). Dkt. No. 2. Defendants removed the action to federal court, where it was initially assigned to Judge Thomas J. McAvoy. Dkt. No. 1.

Briefly stated, plaintiff's complaint alleged that he was injured at work while operating a defective machine designed and manufactured by ITW and Illinois Tool Works, Inc. Dkt. No. 2. Defendants answered, Dkt. No. 8, and the parties stipulated to discontinue the claims against Illinois Tool Works, Inc. Dkt. No. 15. Judge McAvoy so-ordered the parties' stipulation on June 26, 2023. Dkt. No. 17.

Thereafter, the parties conducted nearly a year of discovery before plaintiff realized the materials exchanged had "centered on the wrong product."  Dkt. No. 30.  He sought relief before the assigned magistrate judge,[1] who granted plaintiff leave to amend the complaint.  Dkt. No. 42.

On April 8, 2025, defendant moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff's amended complaint.  Dkt. No. 44.  Plaintiff opposed and cross-moved for leave to amend the complaint a second time.  Dkt. Nos. 48, 49.

The cross-motions have been fully briefed, Dkt. Nos. 44, 45, 48, 49, 52, and will be considered on the basis of the submissions without oral argument.

## II.     BACKGROUND

Plaintiff's amended complaint and his proposed second amended complaint contain identical parties and substantively similar factual allegations.  *Compare* Dkt. No. 43 at 1–4, *with* Dkt. No. 48-8 at 1–8.  For reasons that will be discussed *infra*, the following facts are taken from the proposed second amended complaint unless otherwise noted and are assumed true for the purpose of resolving the pending cross-motions.

Plaintiff lives in Ulster County, New York.  Dkt. No. 48-8 ("Compl.") ¶ 1.  He worked for Kora Components, LLC ("Kora"), a manufacturing company in Ellenville, New York.  *Id.* ¶ 6.  ITW is an Illinois company with a principal place of business in Glenview, Illinois that designs and manufactures industrial machinery and equipment.  *Id.* ¶¶ 2, 5; *but see* Defs.' Answer, Dkt. No. 8 ¶ 3 (affirmatively answering that ITW was incorporated in Delaware).

Sometime before September 25, 2020, Kora purchased a series of industrial machines, including roller presses, truss assembly tables, conveyors, and conveyor rollers, from ITW for

---

[1] Plaintiff initially requested leave to amend at a conference held before U.S. Magistrate Judge Christian F. Hummel. May 28, 2024 Text Minute Entry; Dkt. No. 34.  The case was later reassigned to U.S. Magistrate Judge Paul J. Evangelista on January 8, 2025, Dkt. No. 41, who issued order granting plaintiff's motion to amend.

use in its Ellenville manufacturing facility.  Compl. ¶ 7.  One such machine manufactured by ITW and sold to Kora was the Alpine RollerPress.  *Id.* ¶ 9.  ITW knew that Kora purchased the Alpine RollerPress and other machinery with the intention of integrating the various pieces of machinery into a cohesive system, to be used to fabricate wood trusses at Kora's facility.  *Id.* ¶ 8.  ITW representatives visited the facility to assess its operational needs before delivering the machinery.  *Id.* ¶ 45.

On September 25, 2020, plaintiff was working for Kora, outside of the facility.  *Id.* ¶¶ 6, 13.  He was unloading the first wooden truss of the day from the conveyor rollers when a second truss was discharged onto the rollers from inside the building.  *Id.* ¶ 13.  While plaintiff was still holding the first truss, the second truss unexpectedly came into contact with the first, knocking plaintiff to the ground and causing him to sustain serious injury.  *Id.* ¶¶ 14–16.  There was a stop bar, but neither plaintiff nor his coworker were close enough to use it to prevent the collision that caused plaintiff's injury.  *Id.* ¶ 24.  There was no other way for plaintiff or any other employee standing outside the facility to effectuate an emergency stop of the machinery.  *Id.* ¶ 25.  Neither the machines themselves, nor their operation manuals, included instructions or warnings regarding safe practices for removing a truss from the machine, emergency stopping, or installation and proper use of the roller conveyor subsystem.  *Id.* ¶¶ 26–28, 33.

## III.    LEGAL STANDARD

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV.    DISCUSSION

As an initial matter, the parties' cross-motions breeze past an interesting procedural issue. Judge Evangelista already granted plaintiff leave to file his first amended complaint. There, in a workmanlike opinion, Judge Evangelista concluded that plaintiff's first amended complaint met the relevant legal standards for amendment in light of the developments in this litigation. Dkt. No. 42 at 17–18. As noted *supra*, defendant has now moved to dismiss that exact pleading.

Ordinarily, there is no daylight between the legal analysis used to determine whether to permit amendment and a motion to dismiss under Rule 12(b)(6). *See Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."). So at first blush, defendant's motion to dismiss has something of a groundhog-day-like character to it: is it procedurally appropriate to do this all over again?

The short answer is yes. After reviewing the file and the parties' submissions, the Court has identified a couple reasons why another round of pre-answer motion practice is not necessarily procedurally improper. First, district courts in this circuit have concluded that

*seriatim* motions to dismiss on 12(b)(6) grounds are not necessarily objectionable as long as the moving party has a good reason for trying again. *Compare, e.g., Ortiz v. Consol. Edison Co. of N.Y., Inc.*, 801 F. Supp. 3d 260, 321 (S.D.N.Y. 2025) ("Courts in this District have . . . held that successive Rule 12(b)(6) motions are not procedurally improper.") (quoting *Ballast v. Workforce7 Inc.*, 2024 WL 307966, at *5 (S.D.N.Y. Jan. 26, 2024)), *with, e.g., Hahn v. JetBlue Airways Corp.*, 738 F. Supp. 3d 229, 256 (E.D.N.Y. 2024) ("[T]he filing of an amended complaint does not automatically revive the defenses and objections a defendant waived in its first motion to dismiss, nor does it allow a defendant to advance arguments that could have been made in the first motion to dismiss.") (internal quotations and citations omitted).

Second, and more importantly, plaintiff has elected to cross-move for leave to further amend. Although a plaintiff who has a legally sufficient pleading need not even oppose a motion to dismiss, *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000), plaintiff's decision to seek leave to further amend puts the Court squarely in the position of having to take a fresh look at the sufficiency of the allegations in his latest proposed pleading.

### A.    Plaintiff's Proposed Amended Complaint

To understand why, keep in mind that defendant has moved to dismiss the *first* amended complaint, *i.e.*, the amended pleading that plaintiff was given leave to file. In response, plaintiff has cross-moved for leave to file a *second* amended complaint. If plaintiff's cross-motion for leave to amend were granted, in whole or in part, the first amended complaint would no longer be the "operative" pleading. That would be enough to moot defendant's motion to dismiss, since it was directed at plaintiff's *first* amended complaint. Thus, defendant would ordinarily have to file yet another motion to dismiss the second amended complaint.

This "moot and re-brief" approach is appropriate in certain situations. For instance, an amended pleading will sometimes identify totally different defendants or assert distinct claims based on a different or additional set of facts. "Under those circumstances, the better course of action is likely to permit the amendment and then invite another round of [ ] briefing." *Byrd v. Town of DeWitt*, 698 F. Supp. 3d 379, 386 (N.D.N.Y. 2023).

But that approach is not necessary in this case. Plaintiff's proposed second amended complaint does not seek to add any new claims or new defendants. Instead, the proposed second amended complaint arises from the same basic set of facts, albeit with a greater level of detail, that he has already alleged: he suffered a workplace injury due to defendant's allegedly defective products. In plaintiff's own words, he seeks to amend the complaint a second time "*not* to add new allegations and/or causes of action," but to "augment the facts as alleged in light of the discovery exchanged[.]" Dkt. No. 48-7 at 9 (emphasis in original).

Under these circumstances, "district courts often streamline their analysis with a time-saving strategy: they simply evaluate the pending motion to dismiss in light of the facts alleged in the proposed amended pleading." *Byrd*, 698 F. Supp. 3d at 386. Indeed, the Second Circuit has endorsed this as a "sound approach that promotes judicial economy by obviating the need for multiple rounds of briefing." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020).

In short, defendant's pending motion to dismiss will be evaluated against the allegations in plaintiff's proposed second amended complaint. And because the deadline for plaintiff to amend under the scheduling order has long since passed, *see* Dkt. No. 13, the Court must also consider whether plaintiff has shown "good cause," meaning that "despite [his] having exercised

diligence, the applicable deadline could not have been reasonably met." *Scalia v. Sarene Servs., Inc.*, 740 F. Supp. 3d 251, 275 (E.D.N.Y. 2024) (citation omitted).

"Once a court has determined that the party seeking leave to amend the complaint after the deadline has passed has shown good cause, it must then ensure that the party has also met the requirements of Rule 15(a)(2) and show that there is no bad faith, undue delay, futility, or undue prejudice to the non-moving parties." *Id.* at 276 (citing *Huber v. Nat'l R.R. Passenger Corp.*, 2012 WL 6082385, at *3–8 (S.D.N.Y. Dec. 4, 2012)).  Therefore, if one or more of the claims in the proposed second amended complaint would *not* survive a motion to dismiss, then plaintiff's cross-motion to amend his complaint must be denied (in part or in whole) as "futile."  *See, e.g.*, *Lucente*, 310 F.3d at 258.

### B.     Plaintiff's Extraneous Submissions

This leaves a final threshold matter to address.  In his cross-motion to amend, plaintiff submits and relies on various materials outside the pleadings, including deposition transcripts, responses to interrogatories, and plaintiff's own expert's report.  *See* Dkt Nos. 48-1–48-6; Dkt. No. 48-7 at 10–18.  Plaintiff also repeatedly refers to an "investigation following the incident" in his proposed second amended pleading.  *See, e.g.*, Compl. ¶¶ 18–23.

Plaintiff explains that this "investigation" was conducted by his expert, Dr. Jeffrey Ketchman, and has been summarized in a report which plaintiff also appends to the cross-motion to amend.  *See* Dkt. No. 48-7 at 10–13.  Defendant, for its part, urges the Court not to consider these materials, or else argues the Court must convert the cross-motions into motions for summary judgment (which defendant would also oppose with additional briefing).  Dkt. No. 52 at 9–11.

Generally speaking, a pleading is deemed to include (1) documents attached to the complaint; (2) documents incorporated by reference in the complaint (and provided by the parties); (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. *See L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 421–22 (2d Cir. 2011).

In order to be "integral" to the complaint, the complaint must rely heavily on the document's terms and effect. *Yung v. Lee*, 432 F.3d 142, 146–47 (2d Cir. 2005) (citations omitted). If the Court is to consider such a document, it must be clear that no dispute exists regarding the authenticity or accuracy of the document and that no material dispute exists regarding the relevance of the document. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991) (holding the district court could consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint).

Measured against this general body of law, the Court need not convert the cross-motions into motions for summary judgment for two reasons. First, although the documents that plaintiff has appended to his cross-motion may fall under one or more of the exceptions, it is unclear that the "investigation" plaintiff refers to in the proposed second amended complaint is the same as the one discussed in his expert's report. Second, and just as importantly, defendant disputes the accuracy of the expert report itself.

As to the first reason, plaintiff solely refers to the "investigation" as occurring sometime "following the accident," and does not clearly identify it as Dr. Ketchman's investigation, nor does plaintiff state that this investigation is the one memorialized in Dr. Ketchman's report. *See*

Compl. ¶¶ 18–23, 25–31.  Assuming the investigation is one and the same, plaintiff seems to have relied upon Dr. Ketchman's report in drafting the proposed second amended complaint, as he states the "proposed amendment is based upon documentation that has already been exchanged among the parties, including but not limited to plaintiff's expert witness disclosure," Dkt. No. 48-7 at 10, and later states that Dr. Ketchman's report was "based upon his review of the aforementioned documents and a site inspection."  *Id.* at 11.

But as stated above, it is not clear from the proposed second amended complaint that the "investigation" refers to Dr. Ketchman's report.  And even if it were clear, defendant challenges the accuracy of the findings reported in Dr. Ketchman's report.  *See* Dkt. No. 52 at 10–11 (stating that "plaintiff's own cited evidence contradicts [Dr. Ketchman's] report").

The Court will therefore decline to convert the cross-motions into motions for summary judgment, and will also decline to consider Dr. Ketchman's extraneous report, and the materials cited therein, at the motion-to-dismiss stage.  *See ICM Controls Corp. v. Honeywell Int'l, Inc.*, 2019 WL 7631075, at *10 (N.D.N.Y. Dec. 3, 2019) ("On a motion to dismiss, the trial court's function 'is merely to assess the legal plausibility of the [pleading], not to assay the weight of the evidence which might be offered in support thereof.'") (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

Our Circuit's precedent supports this approach.  *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 108–09 (2d Cir. 2021) (finding the district court erred in considering extraneous documents where there were open "questions as to the authenticity and status of [the] documents"); *Jordache Enters., Inc. v. Affiliated FM Ins. Co.*, 2022 WL 986109, at *6 n.8 (S.D.N.Y. March 31, 2022) (declining to consider expert reports submitted with plaintiff's

opposition to a motion to dismiss because they were not "written instruments" attached to the complaint as exhibits, incorporated into it by reference, or integral to the complaint).

The Second Circuit recently reviewed a case with some procedural irregularities not entirely unlike those in the case at bar. *Miller v. Lamanna*, --- F.4th ---, 2026 WL 643744 (2d Cir. Mar. 9, 2026). In that case, defendants moved for summary judgment or, in the alternative, to dismiss the complaint for failure to state a claim following the close of discovery. *Id.* at *2–3. The district court granted defendants' motion on Rule 12(b)(6) grounds based on the allegations in the complaint alone, declining to consider the available summary judgment record. *Id.* at *3.

The Second Circuit reversed, holding that the district court committed procedural error in making this "reverse conversion" from a motion for summary judgment to a motion to dismiss because, at that advanced stage of the proceeding, the court should have considered the extensive factual record in assessing the sufficiency of plaintiff's claims. *Miller*, 2026 WL 643744, at *5–7.

But this case is readily distinguishable from *Miller* for at least three reasons. First, here, and unlike in *Miller*, discovery is not yet complete. Following a discovery hearing, U.S. Magistrate Judge Hummel wrote in a text order that discovery and motion deadlines would be "reset after a decision on the Motion to Amend [was] issued." *See* May 28, 2024 Text Minute Entry. Based on this Court's review, new deadlines were not set following the granting of plaintiff's motion to amend, and this cross-motion briefing followed soon thereafter. *See generally* Dkt. Nos. 42–52.

Second, assuming that the case continues following the resolution of the pending cross-motions, the factual record is not yet complete. The parties will need to conduct additional discovery based on plaintiff's updated allegations. While the Court does not endorse defendant's view that discovery would entail the parties "beginning anew," Dkt. No. 52 at 6, more discovery would be warranted based on the augmented factual allegations in the proposed second amended complaint.

Third, defendant's motion is styled as a Rule 12(b)(6) motion to dismiss, not a Rule 56 motion. Defendant's first and only mention of Rule 56 comes in its reply memoranda. *See* Dkt. No. 52 at 9–11. Defendant argues that, if the Court were to consider such extraneous materials, it should convert the cross-motions into motions for summary judgment and allow defendant to submit additional supporting materials—a change it would oppose. *Id.* at 10 n.3. This is distinct from the facts in *Miller*, where both parties relied on the fulsome summary judgment record in their briefing. 2026 WL 643744, at *8.

The Court's decision not to convert the pending cross-motions into motions for summary judgment is distinguishable from the impermissible "reverse conversion" in *Miller* and does not "nullify the aims of the different standards generally applicable to motions to dismiss and for summary judgment." 2026 WL 643744, at *5 (citation and quotations omitted). Accordingly, in resolving the cross-motions, the Court will not consider Dr. Ketchman's report or the other documents filed as exhibits to the cross-motion.

## C.    Motion to Dismiss for Failure to State a Claim

For the reasons discussed above, the Court reviews plaintiff's proposed second amended complaint in light of defendant's motion to dismiss. Plaintiff argues in his opposition that

defendant's motion to dismiss is untimely because "the case has moved well beyond the pleadings stage and two years of discovery has now been completed." Dkt. No. 48-7 at 7.

It is well-established, however, that "an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Carter v. Ralph Lauren Corp.*, 683 F. Supp. 3d 400, 419 n.10 (S.D.N.Y. 2023) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)). Defendant is therefore entitled to move to dismiss the first amended complaint and/or the proposed second amended pleading. *See Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, 2021 WL 634717, at *5 (S.D.N.Y. Feb. 16, 2021) (holding defendants did not waive right to move to dismiss amended complaint by answering original complaint).

The Court will first examine whether plaintiff meets the good cause standard to amend his complaint under Rule 16. *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (noting that "compliance with Rule 16 is a threshold matter which may obviate the Rule 15 analysis"). Finding that good cause exists, the Court will then address the merits of the proposed second amended complaint under Rule 15(a)(2) contemporaneously with defendant's motion to dismiss. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).").

### 1. Rule 16 "Good Cause" Analysis

As mentioned *supra*, plaintiff's amendment comes well after the relevant scheduling deadline in this case and is now subject to the higher "good cause" standard in addition to the futility analysis. In the good cause analysis, while "the primary consideration is whether the moving party can demonstrate diligence," the court "also may consider other relevant factors"

including potential prejudice to the defendant.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

"Rule 16(b)(4)'s good cause requirement is met when a party shows that, despite its having exercised diligence, the applicable deadline could not have been reasonably met."  *Scalia*, 740 F. Supp. 3d at 275 (cleaned up).  Good cause to amend the complaint may exist where a plaintiff learns the relevant facts after the deadline.  *Perfect Pearl Co.*, 889 F. Supp. 2d at 457 ("A party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline.") (cleaned up).

Briefly stated, good cause exists here.  The proposed amendment serves to clarify the issues to be presented.  And plaintiff learned the additional facts alleged through discovery and filed the cross-motion to amend two months after the first motion to amend was granted.  *See* Dkt. Nos. 42, 49; *see also Margel v. E.G.L. Gem Lab Ltd.*, 2010 WL 445192, at *10 (S.D.N.Y. Feb. 8, 2010) (granting motion to amend despite delay of at least six months and noting that "courts frequently grant leave to amend after much longer periods of delay"); *cf. McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007) (finding good cause not met when plaintiffs "became aware of the need to consider a possible claim . . . more than seven months before moving to amend their complaint").

In finding good cause, the Court has also considered the additional delay and expense imposed on defendant in having to participate in additional discovery.  However, "delay (and its necessary consequence, litigation expense) does not, without more, constitute undue prejudice." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017).  The Court therefore finds good cause exists to allow plaintiff to amend the complaint a second time to conduct limited additional discovery as outlined *infra*.

### 2.    Rule 15(a)(2) Analysis

This Court's assessment, however, does not end there.  Plaintiff's proposed amendment must also satisfy the Rule 15(a)(2) analysis, which provides that leave to amend shall be "freely given when justice so requires."  The Court must determine whether there is a good reason to deny such leave, such as "futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy*, 482 F.3d at 200–01.  Because "[t]he question whether an amendment would be futile is [ ] governed by the same standard that applies to whether an already-filed pleading states a claim," *Perfect Pearl Co.*, 889 F. Supp. 2d at 459, a brief review of the substantive legal standards governing plaintiff's claims is warranted.

There are four theories of New York law under which plaintiffs may pursue a recovery based upon a claim of products liability: (1) strict liability; (2) negligence; (3) express warranty; and (4) implied warranty.  *Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d 123, 129 (N.D.N.Y. 2022) (citations omitted).  "Although the available defenses and applicable limitations principles of the various liability theories differ, there can be a high degree of overlap between the substantive aspects of the causes of action."  *Parillo v. Stryker Corp.*, 2015 WL 12748006, at *2 (N.D.N.Y. Sept. 29, 2015) (cleaned up).  Each theory requires the plaintiff to plausibly allege: (i) the product was defective in design or manufacture; and (ii) the product was the actual and proximate cause of his injury.  *Reynolds-Sitzer*, 586 F. Supp. 3d at 129.

Plaintiff brings claims under theories of strict liability and negligence.  As discussed *supra*, Judge Evangelista already assessed the sufficiency of plaintiff's first amended complaint and granted him leave to amend, finding that the claims for negligence and strict liability withstood a futility analysis.  Dkt. No. 42 at 13–19.  Plaintiff now argues that he should be granted leave to amend the complaint again because the proposed second amended complaint

"more thoroughly sets forth facts that were discovered during the discovery process." Dkt. No. 48-7 at 5.

For substantially the same reasons discussed in Judge Evangelista's opinion, plaintiff's proposed amendment satisfies the futility analysis. For instance, Judge Evangelista found that "[a]lthough lacking in detail," plaintiff's first amendment was not futile because it alleged that the truss fabrication system was defective due to the lack of "readily accessible emergency stop features" and "adequate instructions for its use, assembly, or arrangement." Dkt. No. 42 at 16–17.

Not only are these claims still present in the proposed second amended complaint, they are also alleged in greater detail. *Compare* Dkt. No. 43 ¶¶ 10, 15 *with* Dkt. No. 48-8 ¶¶ 12–17, 40–41. Plaintiff alleges additional ways in which the machines' warnings were allegedly inadequate to prevent his injury. *See* Dkt. No. 48-8 ¶¶ 51, 54. In sum, plaintiff's amendment is not futile, as he has plausibly alleged that a product (whether the truss fabrication system as a whole or perhaps a component part) was defective in design or manufacture and that the product was the actual and proximate cause of his injury. *Reynolds-Sitzer*, 586 F. Supp. 3d at 129.

Against this backdrop, the Court finds that plaintiff should be permitted to amend the complaint and continue with some additional discovery to determine which component of the truss fabrication system caused plaintiff's injury and whether or not defendant designed or manufactured this part. Accordingly, defendant will be directed to answer the second amended complaint.

That said, plaintiff is cautioned that the Court's generosity is not unlimited. The policy favoring liberal amendment must be balanced against other important interests, including undue delay and prejudice to the defendant. *See McCarthy*, 482 F.3d at 200–02. This will be plaintiff's

third attempt to frame a pleading to state his claims, and it comes after more than a year of discovery that was "centered on the wrong product." Dkt. No. 30. Should a further period of targeted discovery fail to bear fruit, defendant would be fully justified in taking advantage of other civil procedural mechanisms that would permit the prompt and fair disposition of this action. *See Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 147–48 (2d Cir. 2020) (holding that although "a plaintiff afforded attempt after attempt . . . might one day succeed in stating a claim[,] . . . the federal rules and policies behind them do not permit such limitless possibility").

Relatedly, while the factual allegations in plaintiff's proposed second amended complaint have been taken as true for the purpose of this technically pre-answer motion practice, it bears mentioning that defendant adamantly denies it is responsible for the design or manufacture of the machinery that allegedly caused plaintiff's injury. In support of this position, defendant argues that plaintiff's employer Kora, not defendant, combined several pieces of defendant's machinery into the "truss fabrication system" on which the injuries in plaintiff's first and second amended pleadings are based. If that is accurate, proving causation might be a challenge. *SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 552 (S.D.N.Y. 2022) ("New York courts are reluctant to impose a duty of care when there is little expectation that the defendant could prevent the actions of a third party.") (internal citation omitted).

## V.    CONCLUSION

In sum, defendant's motion to dismiss will be denied so that plaintiff may conduct limited additional discovery regarding: (1) which component part(s) of the truss fabrication system caused plaintiff's injury; and (2) whether defendant designed or manufactured such part(s).

Therefore, it is

**ORDERED** that

1. Defendant's motion to dismiss (Dkt. No. 45) is **DENIED**;

2. Plaintiff's cross-motion to amend (Dkt. No. 49) is **GRANTED**;

3. Plaintiff's second amended complaint (Dkt. No. 48-8) is accepted for filing;

4. Defendant is directed to answer the second amended complaint within FOURTEEN
   DAYS of the date of this order; and

5. This matter is referred to the assigned Magistrate Judge to facilitate further discovery
   as appropriate.

**IT IS SO ORDERED.**

Dated:  March 27, 2026
        Utica, New York.

Anthony J. Brindisi
U.S. District Judge